Matt Richter The salient question in this case is whether the ALJ adequately constructed the requisite logical and accurate bridge between the evidence and her wholly implicit residual functional capacity conclusion that appellant would never experience COPD-induced time off task over the course of a work day, work week, or even a work month. And the answer to that question is resoundingly no, as the ALJ in her decision did not even ponder the question of whether appellant's pulmonary impairments, which required he engage in nebulizer treatments every six hours for maintenance of baseline pulmonary function and is needed for exacerbation, would ever be off task in a work setting to do so. She did not logically articulate how she concluded a person who, over the course of two years, had to be treated for pulmonary exacerbations at the hospital on at least six occasions. Two of those were instances in which she had to be admitted and treated for a week at a time. She failed to logically establish the fact that those pulmonary impairments would never cause him to be off task on some level or some basis. While she mentioned the advance, she did not logically explain how such evidence failed to support at least some time off task as a part of the residual functional capacity. In fact, she didn't even entertain the possibility. It's rather confusing to imagine how the Social Security Administration can argue its adjudicator built a logical and accurate bridge to her conclusion when her decision does not even contemplate the possibility of the opposite conclusion, that appellant would, from time to time, be off task as a result of his COPD-induced symptoms. She vaguely and inaccurately concluded appellant's disabling symptoms and functional limitations concluded after his second week-long hospital stay in 2015. This was inaccurate. He had COPD exacerbation, for which he required nebulizer solution refill just two months after that very hospital stay. He exhibited expiratory wheezing and coarse breath sounds on exam at multiple consecutive appointments in the next year, 2016, and he was noted that he had to use his nebulizer with increased frequency. In August 2016, he had another exacerbation of his pulmonary symptoms, and he was instructed to continue to use that nebulizer as needed with inhalation of the medication every six hours. Simply put, some explanation was required on the ALJ's part with regard to how the aforementioned evidence informed her conclusion that the appellant would never be off task as a result of his COPD. Further compounding her error was the fact that appellant's treating nurse practitioner, who specialized in pulmonary impairments, opined that he would be off task and absent from work as a result of these pulmonary exacerbations and the treatment he required to maintain some normal baseline of functionality. That nurse practitioner acknowledged the waxing and waning nature of his impairment, but concluded that bad days, which he would have, would result in time off task. In dismissing that opinion, the ALJ did not seem to consider that normal pulmonological function some of the time, or even if Mr. Sash was functioning from a pulmonary standpoint most of the time, does not logically preclude the probability that he would be off task during exacerbation or during those times in which he had to engage in regular breathing treatments with a nebulizer machine. The ALJ did not even attempt to navigate these logical obstacles in concluding appellant would never be off task, and she was required to do so in attempting to construct that requisite logical and accurate bridge from the evidence to her ultimate conclusion. Unless the court has any further questions, I would just say that her failure to do this requires remand, and I would rest there. Thank you. Mr. Hensley? Mr. Hensley? Good morning. This is Jay Hensley. I represent the appellee. May it please the court. Your honors, Mr. Sash is asking this court to speculate about the possibility that he might need to use his nebulizer machine at work from time to time. We respectfully submit that the issue is not whether the ALJ could have imposed an off task limitation to accommodate such a possibility. Instead, and this is a critical point, the issue is whether the evidence compelled that Mr. Sash disagrees with the ALJ's reasonable interpretation of the evidence and is asking this court today to re-weigh the evidence. Your honors, the threshold for substantial evidence review, as you know, is not a high one. As the Supreme Court explained in the Bistek case, it calls for deference to the presiding administrative law judge who saw the hearing up close, and it's an even less demanding standard than the clearly erroneous standard of review, which itself is very deferential. Mr. Sash simply fails to satisfy his indisputable burden of demonstrating that the administrative law judge failed to consider evidence showing that he would need to use the nebulizer at certain times of the day or for specific periods of time. Substantial evidence supports the administrative law judge's decision denying Mr. Sash benefits. We respectfully would ask this court for an affirmance of this finding. The ALJ's thorough discussion of Mr. Sash's COPD is clear from the decision. She found this impairment severe at step two of the sequential evaluation process. She devoted no less than three single-spaced pages in her decision to a comprehensive analysis of Mr. Sash's COPD history. And finally, she included functional limitations in her determination of Mr. Sash's residual functional capacity, specifically to avoid concentrated exposure to humidity and extreme cold and heat, and to avoid even moderate exposure to fumes, odors, dust, gases, chemicals, and poor ventilation. Furthermore, the ALJ properly acknowledged Mr. Sash's exacerbations in which he required either emergency department treatment or hospitalization. However, it must be remembered, Your Honors, that the most recent of these exacerbations occurred in May, June 2015, approximately two years before the administrative hearing in this case. After June 2015, Mr. Sash's treatment records demonstrate no significant evidence of breathing difficulties or disabling abnormalities. And in fact, in February 2016, nurse practitioner Jennifer Bow noted that Mr. Sash had not needed to use even his rescue inhaler recently and, in fact, was doing very well. Now, this is not to say Mr. Sash no longer requires his nebulizer. We agree. The medical record demonstrates regular prescriptions for nebulizer refills. But we submit that this evidence by itself is insufficient to disturb the ALJ's well-reasoned determination. Significantly, Mr. Sash is unable to provide specific evidentiary references establishing the frequency or the duration of his actual nebulizer use. And in fact, nurse practitioner Bow does not even refer to Mr. Sash's use of a nebulizer in concluding that Mr. Sash would be off task during a work day. We would ask the court to consider this. First, clearly, Mr. Sash must feel that his COPD is at least one of his primary impairments and that his need for the nebulizer was a significant limitation on his functional capacity. After all, this is the sole argument that he presents on appeal. Secondly, Mr. Sash was represented by an attorney at his administrative hearing. Third, the ALJ questioned Mr. Sash at the hearing about each of his various impairments. And when he asked about or when she asked about his COPD treatment, Mr. Sash testified that he used two inhalers during the day and an emergency puffer if it gets real bad. And then quoting Mr. Sash, quote, and then I have a breathing machine at the house that I do too. End of quotes. Finally, he indicated that he took a pill at night time. Missing from this exchange, your honors, is any indication that Mr. Sash needs to use his nebulizer machine every six hours or even every day for that matter. Fourth and finally, his attorney sought no further clarification on this issue and in fact, Mr. Sash did not make this an issue until he got to district court. We submit that if Mr. Sash in fact regularly needed to use his nebulizer every six hours, his testimony and his treatment notes would have reflected this. Given the medical record in front of her, the ALJ's decision is supported by substantial evidence and should be upheld. Now with regard to Nurse Practitioner Bowe's medical source statement, the Administrative Law Judge properly considered Nurse Practitioner Bowe's opinion that Mr. Sash would be off task 10% of the workday and would be incapacitated for a week by asthma attacks four times a year. However, contrary to Miss Bowe's opinion, the Administrative Law Judge noted Mr. Sash's treatment records from October and December 2015 and January through May 2016 showing an absence of significant breathing difficulties besides some wheezing. Also, Miss Bowe herself noted again in February 2016 that Mr. Sash had not needed to use even the rescue inhaler recently and was doing very well. A June 2016 chest x-ray showed clear lungs and by December of 2016, just months before his hearing, Mr. Sash's lungs were clear and his treatment notes demonstrated no continuing or further breathing difficulties. Finally, Miss Bowe's opinion was also inconsistent with Mr. Sash's pulmonary function test showing only mild COPD with declined values. For these reasons, the LJ's decision not to give a significant weight to Miss Bowe's opinion also was supported by substantial evidence. So for all of these reasons, Your Honors, we would ask that this Court uphold the LJ's decision denying benefits and unless there are any questions, I just thank you for your time and we would submit on our briefs. Thank you. Mr. Richter, rebuttal. Thank you, Your Honor. Just briefly, I want to make very clear here that appellants not asking this Court to re-weigh any evidence here. What appellants asking for is that the Court instruct the ALJ to articulate that weighing logically and accurately just one time because that didn't happen during the time in which she issued her decision. Commissioner has mentioned a few things here that I find to be in dispute factually. The appellant was prescribed a nebulizer every six hours in order to maintain a baseline of pulmonary functioning. He was hospitalized twice in 2015 and after that, he didn't have to be admitted into the hospital again, but he did have pulmonary exacerbations in which he had to present to his doctor and in which he exhibited symptoms of wheezing, of course, breath sounds. The doctor or the nurse practitioner described it as a pulmonary exacerbation. It was noted that he had to use this nebulizer even more frequently than he was. So, what I urge the Court to remember here is that the ALJ concluded that Mr. Sosch would never be off tap as a result of his pulmonary symptoms and his treatment of those symptoms. One minute remaining. Thank you. The ALJ did not give any sort of rationale for coming to that conclusion. Listing the evidence which logically supports Mr. Sosch's contention, merely listing that, does not provide this Court with means to meaningfully review whether her conclusion was supported by substantial evidence. In that case, we would ask that the Court remand the case for new hearing. Thank you. Thank you very much. Our thanks to both counsel and the case is taken under advisement.